## THOMAS FOSTER

### v.

## NATHAN STRONG ET AL.

1. ASSIGNMENT OF MORTGAGE OR TRUST DEED.—Mortgages and trust deeds are not assignable at law, and the assignee takes them subject to the same defenses to which they were subject as between the original parties, and the mortgagor may invoke the preventive powers of a court of equity to control the use of them in the hands of an assignee.

2. FRAUD IN OBTAINING ASSIGNMENT AND POSSESSION OF DEEDS.— Where the possession of the deeds of trust was obtained by false representations, the turning them over to a third party as assignee without the grantor's knowledge or consent was a fraudulent misappropriation, and the assignee holds them subject to the same defenses as when in the hands of the parties by whose fraud they were obtained.

3. PURCHASER BOUND TO INQUIRE.—Where, upon the face of the instruments themselves, it is apparent for what purpose they were executed, and there is sufficient to put the purchaser upon inquiry as to the title of the holder, he will be bound to make such inquiry.

APPEAL from the Circuit Court of Cook county; the Hon. W. W. FARWELL, Judge, presiding. Opinion filed March 2, 1880.

Messrs. E. & A. VAN BUREN, for appellant; that there being sufficient upon the face of the instruments to put a purchaser upon inquiry, he is not an innocent assignee: cited Babcock v. Lisk, 57 Ill. 327; Walker v. Dement, 42 Ill. 272; Harper v. Ely, 56 Ill. 179; Fawcett v. Osborn, 32 Ill. 411.

The assignee of the trust deed takes it subject to all the equities between the original parties: Olds v. Cummings, 31 Ill. 188; Fortier v. Darst, 31 Ill. 212; Walker v. Dement, 42 Ill. 272; Hamilton v. Lubukee, 51 Ill. 415; White v. Sutherland, 64 Ill. 181; Petillon v. Noble, 73 Ill. 567.

Mr. W. B. CUNNINGHAM and Mr. H. S. MUNROE, for appellees; that Hull was the agent of complainant, and upon the question of his authority to bind his principal, cited Story on Agency, § 130; Pickering v. Burk, 15 East. 38; Whitehead v.

Tuckett, 15 East. 407; Jeffrey v. Bigelow, 13 Wend. 518; Anderson v. Coonley, 21 Wend. 278; Munn v. Commission Co. 15 Johns. 44; Fenn v. Harrison, 4 Durn. & East. 177; Andrews v. Kneeland, 6 Cow. 358; Com. Bank v. Kortright, 22 Wend. 348; Johnson v. Jones, 4 Barb. 369; Hatfield v. Reynolds, 34 Barb. 612; Fergusen v. Hamilton, 35 Barb. 427; Bank of Genesee v. Patchin Bank, 3 Kernan, 316; McBean v. Fox, 1 Bradwell, 177; Dunning v. Roberts, 35 Barb. 463; Bridenbecker v. Lowell, 32 Barb. 9; Noble v. Nugent, 89 Ill. 523; Anderson v. Armsted, 69 Ill. 452; Barnard v. Campbell, 55 N. Y. 426; Perkins v. Washington Ins. Co. 4 Cow. 646; McNeil v. Nat. Bank, 46 N. Y. 325.

A vendee of land has a mortgageable interest therein: Curtis v. Root, 20 Ill. 521; Baker v. Bishop Hill Colony, 45 Ill. 264.

Nor does the fact that the vendee's name does not appear as grantee affect their validity as to him: Elliott v. Sleeper, 2 N. H. 525.

The assignment of a note carries with it the security: Worcester Nat. Bank v. Cheney, 87 Ill. 609; Carpenter v. Logan, 16 Wall. 271.

When one of two innocent parties must suffer by the fraud of another, the loss must fall upon him whose acts made it possible for the fraud to be committed: Stoner v. Milliken, 85 Ill. 219; Jennings v. Gage, 13 Ill. 611; Hern v. Nichols, 1 Salk. 289; Yocum v. Smith, 63 Ill. 321; Harvey v. Smith, 55 Ill. 224; Garrard v. Haddam, 67 Pa. St. 83; Young v. Grote, 4 Bing. 253.

A party cannot rescind a contract and retain the consideration: Jennings v. Gage, 13 Ill. 611; Buchanan v. Harney, 12 Ill. 336; Bowen v. Schuler, 41 Ill. 193; Ryan v. Brant, 42 Ill. 78; King v. Mason, 42 Ill. 223; Hogan v. Meyer, 5 Hill, 390; Moyer v. Shoemaker, 5 Barb. 322.

Where there is a pledge of negotiable securities it is the duty of the pledgee to collect instead of sell them: Union Trust Co. v. Rigden, Weekly Jur. 1879, 685.

The doctrine of equitable defenses does not apply to assignments of notes secured by deeds of trust: Worcester Bank v. Cheeney, 87 Ill. 609; McNeill v. Tenth Nat. Bank, 46 N. Y. 329; Moore v. Met. Nat. Bank, 55 N. Y. 49.

Foster v. Strong.

A principal cannot set up his agent's unfaithfulness in discharge of his liability: Planter's Bank v. Merritt, 7 Heisk. 198; Hern v. Nichols, 1 Salk. 289; De Voss v. City of Richmond, 18 Gratt. 348.

The assignee was not guilty of negligence in failing to make inquiry into Hull's authority: Jones v. Smith, 1 Hare, 55; Ware v. Egmont, 31 Ev. L. & Eq. 89; De Voss v. Richmond, 18 Gratt. 347.

There was gross carelessness on the part of the maker of the notes and deeds: Stoner v. Milliken, 85 Ill. 219; Walker v. Dement, 42 Ill. 281; Jennings v. Gage, 13 Ill. 611.

McAllister, J. The plaintiff, Foster, in June, 1878, was the owner, having the legal title of record, of eight unimproved lots in the city of Chicago. With the purpose of improving and disposing of them, he entered into an arrangement with Strong, to the effect that the latter should erect and complete eight houses on said lots, and when the erection reached a certain stage, Strong was to become the purchaser, at a certain price for each lot. But to carry the plan into effect, it was necessary to borrow money. They decided to effect what is called a building loan, of $8,000, payable in five years, the securities to be prepared in this form: Strong was to make eight notes, payable to his own order, for $1,000 each, at five years. Foster was to execute a trust deed on each of said lots, each of said notes to be secured by one of such deeds. Hull was a loan broker, he and Strong appearing to have a pretty good understanding with each other. Hull was cognizant of what was going on between Foster and Strong; and so he professed to be negotiating for the loan, as above stated. Finally, he gave Foster to understand that he had effected the loan, and that the getting the money only awaited the completion of the prpers between Foster and Strong. A man of the name of Jansen became interested in the affair. He was to be sub-contractor under Strong, if the plan was carried into effect, and then there was another man of the name of Day manifesting an interest in the arrangement.

A retrospect of these preliminaries, in view of what subse-

quently took place, shows the affair to have been a scheme on the part of some, at least, of the persons mentioned, to cheat Foster out of his eight lots. On Hull's representation that he had already negotiated the loan of $8,000, and on Strong's entering into a formal contract with Foster as to the erection of the eight buildings, and making his eight notes of $1,000 each, at five years, with the required rate of interest, payable to his (Strong's) own order, Foster signed and acknowledged the eight trust deeds upon his lots to L. B. Otis, as trustee (who was in nowise connected with the matter other than to be named as trustee), Strong put his notes, endorsed by him in blank into Hull's hands; and Foster, believing Hull's representations as to having effected the loan, placed the trust deeds as well as the contract between him and Strong, showing the object of the loan, into Hull's hands for the sole purpose of completing said loan of $8,000 for five years. Having thus obtained possession of Foster's trust deed, though for the sole purpose of completing the loan of the $8,000, at five years, which Hull represented to Foster he had already negotiated, and in about seven days thereafter Strong made another note, payable to Blaine, for $2,500, payable in thirty days, with sixty per cent. interest per annum, after due; and after reciting that he (Strong) had deposited with Blaine, as collateral security, his eight promissory notes for $1,000 each, secured by trust deed to L. B. Otis, dated June 17, 1878, with coupons attached, there was subjoined to this note to Blaine a power of attorney, giving Blaine or his assignee authority to sell said securities, or any part thereof, after maturity of that note, at any time thereafter, or before, in the event of said securities depreciating in value, at public or private sale, without advertisement, demand of payment, or giving notice, and apply such proceeds on the payment of said note; also a power of attorney to Van H. Higgins to enter up judgment on said note, with $50 attorney's fees.

It appears that at the time Hull represented to Foster that he had already effected said loan of $8,000, the same was false, and he must have known it, and that Strong was co-operating with him in the fraud. It is a clear inference from the evi-

dence that at that time both Hull and Strong were bankrupts, as they went into bankruptcy soon thereafter; and although both well knew the inducement to and the purpose for which Foster left his trust deeds with Hull, yet they fraudulently diverted them from that purpose, and delivered them to Blaine as collateral security for said thirty-day note for $2,500, made by Strong, containing the power of attorney above stated. Strong being insolvent, of course that note was not paid, and Blaine sold all these trust deeds, together with Strong's eight notes for one thousand dollars each, to his brother-in-law, Chiniquy, for two thousand dollars.  It appears that Blaine, in fact, advanced $2,000 on said note, and the proceeds were divided up, as nearly as can be ascertained from the evidence, among Hull, Day and Jansen, the latter being a representative of Strong.  It appears that Blaine knew, before he advanced the money, that the trust deeds were intended for an eight thousand dollar loan, and it was apparent on their face that such loan was to be for five years; that the title to the premises was in Foster.

The evidence further shows that at the time of the negotiations with Blaine, Foster was well known and was accessible to Blaine; and it further shows that the contract between Foster and Strong, deposited with Hull, was made to disappear, so that it could not be obtained as evidence by Foster.  In this suit by Foster, asking a court of equity upon the foregoing facts, to require the surrender and cancellation of said trust deeds, the court below denied the relief, except upon the condition precedent that Foster bring into court the amount of said $2,500 note, for principal and interest, for the benefit of Blaine and Chiniquy.  From that decree Foster appeals to this court.

The trust deeds in question are, by the laws of this State, regarded as in the nature of mortgages.  R. S. 1874, p. 713, and must, necessarily, stand upon the same footing as regards assignability.  The circumstance that the assignee of a trust deed is not, ordinarily, required to go into a court of equity to make it available by foreclosure cannot in the least affect its nature as respects its assignability at law.  It is the settled law of this State that mortgages, whether upon real or personal property—

and trust deeds are the same—are not assignable at law, and the assignee takes them subject to the same infirmities or defenses to which they were subject as between the original parties. Olds v. Cummings, 31 Ill. 188; Fortier v. Darst, Ib. 212; Walker v. Dement, 42 Ill. 279; Hamilton v. Lubukee, 51 Ill. 415; White v. Sutherland, 64 Ill. 415. And where the mortgage has been assigned, it is not only subject, in the hands of the assignee, to the same infirmities and defenses as in the hands of the mortgagee, but the mortgagor may invoke the preventive powers of a court of equity to control the use of it in the hands of the assignee. Petillon et al. v. Noble et al. 73 Ill. 567. Whatever grounds would be available in a defense to a note, not assigned according to statute, may be available to the maker in invoking the preventive powers of a court of equity. Belohradsky v. Kuhn, 69 Ill. 547.

Hull was a mere agent in respect to the trust deeds, for the purpose of delivering them over to the party from whom he was to obtain the loan of the $8,000 at five years, and the negotiation of which he represented to Foster he had already completed. That representation was false, and Strong was acting in complicity with Hull. The possession by Hull was, therefore, obtained by fraud, and Strong was so connected therewith that if Foster had discovered the fraud before Hull and Strong turned the trust deeds over to Blaine, he could have maintained a bill in equity to have enjoined them from making any disposition of them, and required those parties to surrender them up to be cancelled. So that turning them over to Blaine without Foster's knowledge or consent was a fraudulent misappropriation of them, and the trust deeds not being assignable at law, Blaine holds them subject to the same defenses and infirmities to which they were subject while in the fraudulent possession of Hull, or Hull and Strong, when they passed them over to Blaine. If such be the position and relative rights of the parties, then it must follow that the decree of the court below, requiring Foster to pay into court the amount of the note to Blaine, with interest, as condition precedent to the surrender and cancellation of these deeds, was erroneous, because that is giving him, to a certain extent, the benefits and advan-

tages of a *bona fide* holder of them, as commercial paper—a character denied to them by the law, as well settled in this State. Besides, Blaine had knowledge of circumstances sufficient to put him on inquiry, that there was a diversion of these securities from their original purpose, and he should have made inquiries of Foster, whom he knew to be the owner of the lands covered by them, and who was accessible. The possession of Hull was that of a mere agent for a specific purpose. When put into his hands, neither the deeds nor the notes had ever been delivered so as to become operative. Hull held them for the mere purpose of delivery upon the receipt of the $8,000 loan, which he had fraudulently represented to Foster he, as a broker, had already negotiated.

There is no basis in this case for the application of the doctrine of estoppel as against Foster. A mere bailee or agent in possession, for a specific purpose, is not regarded by the law as having conferred upon him the apparent title and absolute ownership of the thing possessed from that fact alone. It is only when the owner by his own affirmative act has conferred the apparent title and absolute ownership upon another, on the faith of which the chose in action has been purchased for value, that he is precluded from asserting his real title. In the absence of such affirmative acts, the rule applies that the assignor can confer no better title than he himself has. Davis v. Bechstein, 69 New York, 440—a case in point.

The evidence tends to show that some of the money advanced by Blaine was used upon Foster's lots; but how much, is left in uncertainty. If it was so used without Foster's consent, with knowledge as to how it was obtained, that circumstance cannot confer any paramount equity upon Blaine, or impair Foster's right to have his deeds declared void, and delivered up to be cancelled. Being void, we are unable to perceive how any vitality can be infused into them by such means; and it will require very special circumstances to render a party a debtor by means of such an appropriation of the proceeds arising from such fraudulent means.

The decree of the court below will be reversed and the cause remanded for further proceedings not inconsistent with this opinion.                    Reversed and remanded.